**Exhibit A**

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

THE CELLULAR TELEPHONE
ASSIGNED CALL NUMBER
513-338-9279  (T-MOBILE)

)
)
)
)
)
)

Case No.  **1:24-MJ-00346**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*: See Attachment A. This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A), and 2711(3)(A). Because the government has satisfied the requirements of 18 U.S.C. § 3122, this warrant also constitutes an order under 18 U.S.C. § 3123.

located in the _____ District of _____ New Jersey _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 AND 841 | *Conspiracy to possess with intent to distribute a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance* |

The application is based on these facts:

See Affidavit in Support of Application for Search Warrant.  To ensure technical compliance with 18 U.S.C. 3121-3127, the requested warrant will also function as a pen register order.  I thus certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the Drug Enforcement Administration.  See 18 U.S.C. 3122(b), 3123(b).

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

CHRISTOPHER REED
Digitally signed by CHRISTOPHER REED
Date: 2024.05.14 14:24:04 -04'00'

*Applicant's signature*

SA Christopher Reed, ATF

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_via FaceTime video conference_ *(specify reliable electronic means).*

Date:  **May 14, 2024**

*Stephanie K. Bowman*

*Judge's signature*

City and state:  Cincinnati, Ohio

Stephanie K. Bowman, United States Magistrate Judge

*Printed name and title*

## AO 106 ATTACHMENT

*See* Affidavit in Support of an Application for a Search Warrant. To ensure technical compliance with the Pen Register Statute, 18 U.S.C. §§ 3121-3127, this warrant also functions as a pen register order. Consistent with the requirement for an application for a pen register order, I certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the Bureau of Alcohol, Tobacco, Firearms, and Explosives. *See* 18 U.S.C. §§ 3122(b), 3123(b).

I declare under penalty of perjury that the foregoing is true and correct.


May 14, 2024
_____
DATE

*s/ Tim Oakley*
_____
TIM OAKLEY
Assistant United States Attorney

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number 513-338-9279, with an unknown subscriber **(TARGET CELL PHONE)**, whose wireless service provider is **T-Mobile**, a company 4 Sylvan Way, Parsippany, New Jersey 07054. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of **T-Mobile**, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

**I.** **Information to be Disclosed by the Provider**

1. *Historical and Subscriber Information*. To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period **April 1, 2024, to present**:

   a. The following information about the customers or subscribers of the Account:

      i. Names (including subscriber names, usernames, and screen names);
      ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
      iii. Local and long-distance telephone connection records;
      iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
      v. Length of service (including start date) and types of service utilized;
      vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");
      vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and
      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

   b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i. the date and time of the communication, the method of the communication, and the source and destination of the communication – i.e., call detail records - and records of data events across all networks (3G, 4G, 5G)
      ii. All historical location information, including data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and

"sectors" (i.e., faces of the towers) received a radio signal from the Account for the time period **April 1, 2024, to present**. Included is any specialized location data commonly referred to as Network Element Location Service (NELOS), AriesoGeo, Per Call Measurement Data (PCMD), Real Time Tool (RTT), and/or Timing Advance/TruCall.

c. The Provider shall deliver the information set forth above within **3 days** of the service of this warrant and the Provider shall send the information via facsimile or United States mail, and where maintained in electronic form, on CD-ROM or an equivalent electronic medium, to:

> Bureau of Alcohol, Tobacco, Firearms & Explosives
> 550 Main Street, Ste 8491
> Cincinnati, OH 45202
> Fax: 513-684-6359

2. *Prospective Location Information*. The Provider shall provide all prospective location information about the location of the Target Cell Phone described in Attachment A for a period of **thirty days**, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A. To the extent that the location information is within the possession, custody, or control of Provider, Provider is required to disclose the Location Information to the government. In addition, Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

3. *Prospective Pen-Trap Information*. Pursuant to 18 U.S.C. § 3123, the ATF may install and use pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the cell phone identified in Attachment A, including the date, time, and duration of the communication, and the following, without geographic limit:

- IP addresses associated with the cell phone device or devices used to send or receive electronic communications
- Identity of accounts that are linked by creation IP address, recovery email, telephone number, or other identifiers
- Identity of all accounts that are linked to the account by cookies

- Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the cell phone identified in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN
- IP addresses of any websites or other servers to which the cell phone device or devices connected
- Source and destination telephone numbers and email addresses
- "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c)

Pursuant to 18 U.S.C. § 3123(c)(1), the use and installation of the foregoing is authorized for **thirty days** from the date of this Order. Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

## II.     Information to be Seized by the Government

1.     All information described above in Section I that constitutes evidence of violations of Title 21 U.S.C. §846 and § 841 - Conspiracy to possess with intent to distribute a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, by ███████████████ and G. Quan PALMER.

This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

Pursuant to 2703(g), the presence of an agent is not required for service or execution of this warrant.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE(S) ASSIGNED CALL NUMBER(S) **513-338-9279** | Case No. ___**1:24-MJ-00346**___<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Christopher Reed, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **513-338-9279, (**the **"Target Cell Phone"**), whose service providers are **T-Mobile,** a cellular telephone service provider headquartered located at 4 Sylvan Way, Parsippany, New Jersey 07054. The **Target Cell Phone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act.  *See* 18 U.S.C. §§ 3121-3127.  The requested warrant therefore includes all the information required to be included in an order pursuant to that statute.  *See* 18 U.S.C. § 3123(b)(1).

3.      I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been since May 2008. I am presently assigned to the ATF Columbus Field Division, Dayton Satellite Office. I attended formal training at the Federal Law Enforcement

Training Center, where I completed the Criminal Investigator Training Program, and the ATF National Academy, where I completed Special Agent Basic Training. I have received additional training in the enforcement of various criminal statutes enacted in the Gun Control Act of 1968 and the National Firearms Act of 1934. Under 18 U.S.C. § 3051, I am empowered to enforce the criminal laws of the United States. Prior to my employment with ATF, I received additional law enforcement training at the Indianapolis Police Department's Police Academy and served the Indianapolis Metropolitan Police Department for approximately (8) years as a uniformed officer, narcotics detective, and an ATF Task Force Officer.

4.      As a Special Agent, I have participated in investigations involving federal firearms and controlled substance violations. Through these investigations, I have employed various investigative techniques, including conducting electronic surveillance, using confidential informants, and making controlled purchases of firearms and controlled substances. I have conducted physical surveillance and executed federal arrest and search warrants. I also know how to analyze information resulting from traditional record searches and reviewing case files. As a result of my training and experience, I am familiar with federal laws pertaining to the illegal possession of firearms, use of firearms during the commission of crimes, and conspiracies to commit offenses against the United States.

5.      I am familiar with investigations involving the use of cell phones by criminal suspects who are involved in the commission of those offenses. I also have knowledge of the technology used by law enforcement authorities to identify cell phones' users and geographic locations. I have also reviewed forensic extractions of cellular telephones, and other electronic storage media, and have examined content and communications contained within these devices obtained by forensic extraction.  This content includes records of communication through call

logs, text message content, images and videos, and communication made through various social media applications.

6.    I know from training and experience that individuals typically keep cell phones on their persons or within their immediate control, such as in the cupholder of a car they are driving, or in pockets of their clothing, because cell phones are regularly used and possessed as an item of personal property.

7.    This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all my knowledge about this matter.

9.    Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21 U.S.C. §846 and § 841 - Conspiracy to possess with intent to distribute a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, by █████████████ and G. Quan PALMER.  There is also probable cause to search the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

10.    The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the court is a district court of the United States that has jurisdiction over the offence being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

### A.  Introduction

11.   The United States is conducting a criminal investigation of ████████████████

and G Quan PALMER for suspected violations of Title 21 U.S.C. §846 and § 841 - Conspiracy

to possess with intent to distribute a mixture or substance containing a detectable amount of

cocaine, a Schedule II controlled substance by ████████████████ and G. Quan PALMER.

### B.  On April 23, 2024, an ATF Confidential Informant purchased approximately 24.75 grams of suspected marijuana from ████████████████.

12.   On April 23, 2024, law enforcement, through the use of ATF Confidential

Informant 31618 (CI) purchased 24.75 grams of suspected marijuana from ████████████████

on the Shell Gas Station parking lot located at 2974 Colerain Avenue, Cincinnati, Ohio. Prior to

the operation, the participating law enforcement personnel met at a staging location to discuss

operations and meet with the CI. The CI was provided with audio/video recording equipment to

document the purchase of evidence. The CI's person was searched for contraband and weapons

which produced negative results. The CI was driven to the target location by two ATF Special

Agents, acting in an undercover (UC) capacity.

13.   At approximately 5:37pm, the CI and UC Agents arrived at the Shell Gas station

in an undercover (UC) vehicle and parked on the lot. The CI exited the vehicle shortly after and

proceeded into the store. Within approximately five minutes, CI made contact with an individual

identified as (A.S.) who would later sell him/her a small quantity of suspected marijuana. After

the transaction was complete, the CI returned to the UC vehicle and turned over the evidence.

14.	At approximately 6:11pm, the CI approached another subject, later identified as ███████████████. ██████████ was exiting the Shell Gas station and approaching a vehicle parked near the front of the store when the CI approached him. The vehicle was described as a darked colored four door Chevrolet passenger car. The CI asked ██████████ if he had any "gas[1]". ██████████ indicated he did and was charging $125.00 for a zip[2]. When CI asked if he was ready, ██████████ indicated it would be ready in a few. The CI then walked back to the UC's vehicle and stood near the driver's side waiting for ██████████. Approximately a minute later, ██████████ drove over where the CI was standing. While seated in the driver's seat, ██████████ exchanged the suspected marijuana with the CI for $125.00. ██████████ also provided the CI with telephone number 513-610-7731 as way to contact to him and identified himself as "Tay". After the deal was complete, the CI and UCs left the area a short time later and returned to a staging location.

15.	The CI made a positive identification of ██████████ to ATF Task Force Officer (TFO) Brett Stratmann. The suspected marijuana purchased by the CI from ██████████ was photographed and weighed by law enforcement and later placed into the Cincinnati Police Department's property room.

---

[1] The term "Gas" is street terminology for Marijuana.

[2] The term "Zip" is street terminology for one ounce of a substance.



**C.** **On April 24, 2024, an ATF Confidential Informant purchased approximately 29.07 grams of suspected marijuana and 7.91 grams of suspected cocaine from G Quan PALMER.**

16.     On April 24, 2024, law enforcement, through the use of ATF Confidential Informant 31618 (CI), purchased 29.07 grams of suspected marijuana and 7.91 grams of suspected cocaine from G Quan PALMER on the BP Gas Station parking lot located at 249 West Mitchel Avenue, Cincinnati, Ohio. Prior to the operation, the participating law enforcement personnel met at a staging location to discuss operations and meet with the CI. The CI was provided with audio/video recording equipment to document the purchase of evidence. The CI's person was searched for contraband and weapons which produced negative results. The CI was driven to the target location by two ATF Special Agents, acting in an undercover (UC) capacity.

17.     Later that afternoon, the CI made contact with ▮▮▮▮▮▮▮▮▮▮▮▮ via cell phone at approximately 1:43pm. During the phone contact, ▮▮▮▮▮ directed the CI to meet at

3838 Herron (3838 Herron Avenue, Cincinnati, Ohio 45223). The CI, along with the UC Agents, proceed in the UC's vehicle to that location.

18.     While in route to the Herron address, at approximately 1:55pm, the CI received a text message from ▮▮▮▮▮▮ redirecting him/she to the BP Gas station located on Mitchel (249 W. Mitchel Avenue, Cincinnati, Ohio 45232.) A few moments later, ▮▮▮▮▮▮ called the CI**.** During the short call, ▮▮▮▮▮▮ told the CI he had to move. The CI asked ▮▮▮▮▮▮ if it was the same station that he previously met him at. ▮▮▮▮▮▮ stated no, it was right down the street. The call soon concluded.

19.     At approximately 2:04pm, the CI again spoke with ▮▮▮▮▮▮ via cell phone. During the short conversation, the CI told ▮▮▮▮▮▮ he/she would be arriving in two minutes and confirmed he/she was in the truck. The call soon concluded. The UC vehicle arrived at the BP Gas Station shortly thereafter.

20.     At approximately 2:13pm, ▮▮▮▮▮▮ called the CI to advise his friend was at the BP in an Audi. The CI told ▮▮▮▮▮▮ to stay on the phone as he/she walked over to the vehicle which was parked at the gas pumps near the UC vehicle. Once the CI arrived at the vehicle, the CI told ▮▮▮▮▮▮ he/she was good and the call ended. The CI entered the vehicle, later identified by law enforcement as a dark colored Audi A6 Quattro. The Black male driver, later identified as G Quan PALMER, asked the CI what he/she was trying to get on with the "girl[3]".

21.     When the CI asked how much for a "zip", PALMER stated it would cost $725.00. The CI asked PALMER if he was ready right now. PALMER indicated that he wasn't, he would

_____

[3] The term "girl" is street terminology for cocaine.

7

have to go and get it. PALMER told the CI that he only brought a quarter (1/4oz) and it would cost $150.00. The CI then asked PALMER if he brought the "gas" with him. Palmer stated that he did. During their interaction, the CI noticed a tan-colored pistol in laying on PALMER's lap. The CI asked PALMER how much he wanted for it and then offered to pay him $800.00. PALMER declined to sell the suspected firearm.

22.     The CI confirmed with PALMER the cost of the "quarter" (cocaine) was $150.00 and the "gas" was $125.00 for a total of $275.00. The CI told PALMER he/she would be right back exited PALMER's vehicle. The CI reapproached the UC vehicle and advised them of the suspected firearm and need of additional buy funds. After receiving the additional money, the CI returned to PALMER's vehicle. The CI told PALMER when the "zip" was ready (referring to the 1oz of cocaine initially discussed) he/she would come get it. During their conversation, PALMER provided the CI with telephone number **Target Cell Phone** and identified himself as "GG". Before exiting the vehicle, the CI exchanged the $275.00 for the suspected cocaine and marijuana.

23.     After the transaction was complete, the CI exited PALMER's vehicle and returned to the UC vehicle. The UC vehicle left the area and returned to a staging location. The CI later made a positive identification of PALMER to ATF TFO Brett Stratmann. The suspected illegal substances purchased by the CI were photographed and weighed by law enforcement and later placed into the Cincinnati Police Department's property room. The suspected cocaine was field tested by law enforcement personnel which resulted in a postive indication.





**D.  AT&T maintains historical call detail records and has the capability to provide the prospective collection of records.**

24.  In my training and experience, I have learned that **T-Mobile** is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking

technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

25. Based on my training and experience, I know that **T-Mobile** can collect E-911 Phase II data about the location of the **Target Cell Phone** including by initiating a signal to determine the location of the Target Cell Phone on their network or with such other reference points as may be reasonably available.

26. Based on my training and experience, I know that **T-Mobile** can collect cell-site data about the **Target Cell Phone**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as **T-Mobile** typically collect and retain cell-site data and specialized location data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to further

10

identify the **Target Cell Phone** user or users, to assist law enforcement in surveilling the **Target Cell Phone** user during the commission of violations of the Target Offenses, to show where the **Target Cell Phone** user was at certain times relevant to the investigation, and to provide evidence of locations used by the suspect (such as residences, stash houses, or meeting locations).

## AUTHORIZATION REQUEST

27.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

28.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

29.     I further request that the Court direct **T-Mobile** to disclose to the government any information described in Attachment B that is within the possession, custody, or control of **T-Mobile**.  I also request that the Court direct **T-Mobile** to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with **T-Mobile's** services, including by initiating a signal to determine the location of the Target Cell Phone on **T-Mobile** network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall reasonably compensate **T-Mobile** for reasonable expenses incurred in furnishing such facilities or assistance.

30.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cell Phone** outside of daytime hours.

31.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

CHRISTOPHER REED  Digitally signed by CHRISTOPHER REED
Date: 2024.05.14 14:24:37 -04'00'

Christopher M. Reed
Special Agent
Bureau of Alcohol, Tobacco Firearms and
Explosives

Sworn and subscribed to me by reliable electronic means, specifically, FaceTime video conference, pursuant to Fed. R. Crim. P. 4.1, on May \_\_14\_\_, 2024.


_____
HON. STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

## Property to Be Searched

1. The cellular telephone assigned call number 513-338-9279, with an unknown subscriber **(TARGET CELL PHONE)**, whose wireless service provider is **T-Mobile**, a company 4 Sylvan Way, Parsippany, New Jersey 07054. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of **T-Mobile**, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

**I.      Information to be Disclosed by the Provider**

1.  *Historical and Subscriber Information*. To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under <u>18 U.S.C. § 2703(f)</u>, the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period **April 1, 2024, to present**:

    a.  The following information about the customers or subscribers of the Account:

        i.   Names (including subscriber names, usernames, and screen names);

        ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long-distance telephone connection records;

        iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.   Length of service (including start date) and types of service utilized;

        vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

        viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

    b.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

        i.   the date and time of the communication, the method of the communication, and the source and destination of the communication – i.e., call detail records - and records of data events across all networks (3G, 4G, 5G)

        ii.  All historical location information, including data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and

"sectors" (i.e., faces of the towers) received a radio signal from the Account for the time period **April 1, 2024, to present**. Included is any specialized location data commonly referred to as Network Element Location Service (NELOS), AriesoGeo, Per Call Measurement Data (PCMD), Real Time Tool (RTT), and/or Timing Advance/TruCall.

c. The Provider shall deliver the information set forth above within **3 days** of the service of this warrant and the Provider shall send the information via facsimile or United States mail, and where maintained in electronic form, on CD-ROM or an equivalent electronic medium, to:

> Bureau of Alcohol, Tobacco, Firearms & Explosives
> 550 Main Street, Ste 8491
> Cincinnati, OH 45202
> Fax: 513-684-6359

2. *Prospective Location Information*. The Provider shall provide all prospective location information about the location of the Target Cell Phone described in Attachment A for a period of **thirty days**, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A. To the extent that the location information is within the possession, custody, or control of Provider, Provider is required to disclose the Location Information to the government. In addition, Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

3. *Prospective Pen-Trap Information*. Pursuant to 18 U.S.C. § 3123, the ATF may install and use pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the cell phone identified in Attachment A, including the date, time, and duration of the communication, and the following, without geographic limit:

   - IP addresses associated with the cell phone device or devices used to send or receive electronic communications
   - Identity of accounts that are linked by creation IP address, recovery email, telephone number, or other identifiers
   - Identity of all accounts that are linked to the account by cookies

- Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the cell phone identified in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN
- IP addresses of any websites or other servers to which the cell phone device or devices connected
- Source and destination telephone numbers and email addresses
- "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c)

Pursuant to 18 U.S.C. § 3123(c)(1), the use and installation of the foregoing is authorized for **thirty days** from the date of this Order. Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

## II.     Information to be Seized by the Government

1.      All information described above in Section I that constitutes evidence of violations of Title 21 U.S.C. §846 and § 841 - Conspiracy to possess with intent to distribute a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, by ███████████ and G. Quan PALMER.

This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

Pursuant to 2703(g), the presence of an agent is not required for service or execution of this warrant.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

☐ Original          ☐ Duplicate Original

**Exhibit B**

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )    Case No. **1:24-MJ-00346** |
| THE CELLULAR TELEPHONE | ) |
| ASSIGNED CALL NUMBER | ) |
| 513-338-9279  (T-MOBILE) | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ New Jersey
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A. This Court has authority to issue this warrant under 18 U.S.C. 2703(c)(1)(A) and 2711(3)(A).  Because the government has satisfied the requirements of 18 U.S.C. 3122, this warrant also constitutes an order under 18 U.S.C. 3123.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before       May 28, 2024 _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Duty Magistrate Judge _____ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☑ for   30   days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:      **2:38 PM, May 14, 2024** _____         *Stephanie K. Bowman*
                                                                                                *Judge's signature*

City and state:      Cincinnati, Ohio _____         Stephanie K. Bowman, United States Magistrate Judge
                                                                                        *Printed name and title*

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number 513-338-9279, with an unknown subscriber **(TARGET CELL PHONE)**, whose wireless service provider is **T-Mobile**, a company 4 Sylvan Way, Parsippany, New Jersey 07054. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of **T-Mobile**, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

**I.      Information to be Disclosed by the Provider**

1.   *Historical and Subscriber Information.* To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period **April 1, 2024, to present**:

   a.   The following information about the customers or subscribers of the Account:

      i.    Names (including subscriber names, usernames, and screen names);
      ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
      iii.  Local and long-distance telephone connection records;
      iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
      v.    Length of service (including start date) and types of service utilized;
      vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");
      vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and
      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

   b.   All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i.    the date and time of the communication, the method of the communication, and the source and destination of the communication – i.e., call detail records - and records of data events across all networks (3G, 4G, 5G)
      ii.   All historical location information, including data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and

"sectors" (i.e., faces of the towers) received a radio signal from the Account for the time period **April 1, 2024, to present**. Included is any specialized location data commonly referred to as Network Element Location Service (NELOS), AriesoGeo, Per Call Measurement Data (PCMD), Real Time Tool (RTT), and/or Timing Advance/TruCall.

c.  The Provider shall deliver the information set forth above within **3 days** of the service of this warrant and the Provider shall send the information via facsimile or United States mail, and where maintained in electronic form, on CD-ROM or an equivalent electronic medium, to:

> Bureau of Alcohol, Tobacco, Firearms & Explosives
> 550 Main Street, Ste 8491
> Cincinnati, OH 45202
> Fax: 513-684-6359

2.  *Prospective Location Information*. The Provider shall provide all prospective location information about the location of the Target Cell Phone described in Attachment A for a period of **thirty days**, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A. To the extent that the location information is within the possession, custody, or control of Provider, Provider is required to disclose the Location Information to the government. In addition, Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

3.  *Prospective Pen-Trap Information*. Pursuant to 18 U.S.C. § 3123, the ATF may install and use pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the cell phone identified in Attachment A, including the date, time, and duration of the communication, and the following, without geographic limit:

-   IP addresses associated with the cell phone device or devices used to send or receive electronic communications
-   Identity of accounts that are linked by creation IP address, recovery email, telephone number, or other identifiers
-   Identity of all accounts that are linked to the account by cookies

- Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the cell phone identified in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN
- IP addresses of any websites or other servers to which the cell phone device or devices connected
- Source and destination telephone numbers and email addresses
- "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c)

Pursuant to 18 U.S.C. § 3123(c)(1), the use and installation of the foregoing is authorized for **thirty days** from the date of this Order. Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

## II.    Information to be Seized by the Government

1.    All information described above in Section I that constitutes evidence of violations of Title 21 U.S.C. §846 and § 841 - Conspiracy to possess with intent to distribute a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, by ███████████████ and G. Quan PALMER.

This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

Pursuant to 2703(g), the presence of an agent is not required for service or execution of this warrant.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.